

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-21-2009

# Blake McSpadden v. William Wolfe

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-2209

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Blake McSpadden v. William Wolfe" (2009). *2009 Decisions.* Paper 1511.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1511

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 08-2209

———

BLAKE McSPADDEN,

Appellant

v.

WILLIAM J. WOLFE; PATRICIA THOMPSON

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-07-cv-01263)
District Judge: Honorable Jan E. Dubois

———

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 17, 2009

Before: McKEE, SMITH, and VAN ANTWERPEN, Circuit Judges.

(Filed: 04/21/09 )

———

OPINION OF THE COURT

———

VAN ANTWERPEN, *Circuit Judge*.

Blake McSpadden appeals the District Court's April 2, 2008, order dismissing his

42 U.S.C. § 1983 case under Federal Rule of Civil Procedure 12(b)(6) on the grounds that

Appellees were entitled to qualified immunity. McSpadden alleges that Appellees, employees of Pennsylvania's Department of Corrections, violated his constitutional rights by improperly computing his sentence in a manner which resulted in his being wrongfully incarcerated for over 1,050 days. Because of the widely noted confusion in Pennsylvania law with respect to the computation of sentences involving the revocation of probation and parole, this Court affirms the decision of the District Court.

I.

On March 29, 2007, Appellant Blake McSpadden, a former inmate in the Pennsylvania correctional system, filed suit under 42 U.S.C. § 1983 against two Pennsylvania Department of Corrections ("DOC") officials: William J. Wolfe, who was then superintendent of the State Correctional Institution ("SCI") at Albion, and Patricia Thompson, a records specialist at the same institution. Appellant contends that Appellees wrongfully and deliberately caused him to be incarcerated for over 1,050 days after the expiration of his sentence, in violation of the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

On December 23, 1992, Judge Arnold New of the Pennsylvania Court of Common Pleas of Philadelphia County sentenced Appellant to a term of four to twenty-three months' imprisonment, to be followed by one year of probation; he was then incarcerated from December 23, 1992, until April 23, 1993, when he was paroled. After violating the terms of his parole, Appellant was sentenced to an in-patient drug treatment program and

was incarcerated from October 8, 1993, until March 4, 1994, while awaiting placement in such a program. After completing only one out of the scheduled nine months of treatment, Appellant was again found in violation of his parole, resulting in him being incarcerated from May 28, 1994, until August, 2, 1995. On September 21, 1995, Appellant was found to be in violation of his probation,[1] and Judge New resentenced him to 11.5 to 23 months' incarceration followed by one year of probation. Appellant was subsequently incarcerated from September 21, 1995, to September 6, 1996.

On March 16, 1997, Appellant was arrested, and, on April 10, 1997, Judge New once again found him in violation of his probation and resentenced him to three to ten years' imprisonment. On July 22, 1998, Judge New issued an amended order giving Appellant credit for time served during the periods of December 23, 1992, to April 23, 1993; October 8, 1993, to March 4, 1994; May 28, 1994, to August 2, 1995; September 21, 1995, to September 6, 1996; and March 16, 1997, to April 10, 1997. Pursuant to this order, officials at SCI-Chester, where Appellant was incarcerated in 1998, prepared a Sentence Status Change Report reflecting an "additional 1,050 Days credit not previously granted."

---

[1]"When a prisoner is released on parole and then later incarcerated as a convicted parole violator, the remainder of his original sentence is reimposed. Perhaps for this reason, the Legislature has determined that a convicted parole violator must serve the balance of his original term before the new term of imprisonment commences. *See* 61 P.S. § 331.21a(a). On the other hand, when a probationer commits an offense for which probation is revoked, a new sentence is imposed in place of the original sentence of probation." *Jackson v. Vaughn*, 777 A.2d 436, 441 n.4 (Pa. 2001) (Saylor, J., dissenting).

Appellant was later transferred to SCI-Albion, where he alleges that Appellee Wolfe "utter[ly] disregarded both the trial court's July 22, 1998 amended order and [the] Sentence Status Change Report" and "refused to apply the 1,050 days as credit towards [his] sentence." On July 31, 2003, Appellant submitted an "Inmate's Request to Staff Member" form to Albion's records room supervisor; the request questioned the calculation of his sentence. In response, Appellee Thompson, SCI-Albion's records specialist, informed Appellant that he could not receive credit on his new sentence under the Superior Court of Pennsylvania's ruling in *Commonwealth v. Bowser*, 783 A.2d 348 (Pa. Super. Ct. 2001).[2] Thompson also noted that the "matter is now in the hands of [the

---

[2]On August 22, 1994, the defendant in *Bowser* was sentenced to a six to twenty-three month period of incarceration and a three-year period of probation. 783 A.2d at 349. Because he had already been incarcerated for eleven months and nineteen days on the day the sentence was announced, he was immediately paroled. Defendant's parole period ended, after which he was convicted of a second offense and was accordingly resentenced to one to three years' incarceration. In rejecting the defendant's argument that the eleven months and nineteen days he had already served should be credited to the new one- to three- year sentence, the Superior Court held that, as defendant "received credit for the time in jail on the first component of the sentence, [he] did not spend the last half of the 23-month incarcerative portion of his sentence in jail. Probation began after that credit. Credit has been given once; had no credit been given, he would not have been paroled in August 1994, and his probation would not have begun for some months thereafter. We see no reason to award duplicate credit in the second component of the sentence." *Id.* at 350. In doing so, the *Bowser* court rejected defendant's contention that *Commonwealth v. Williams*, 662 A.2d 658 (Pa. Super. Ct. 1995), required a different result:

In *Williams*, this Court ordered the appellant's sentence (following the revocation of probation) be credited with previous time spent incarcerated, because the revocation sentence constituted the maximum time the appellant could serve for the crime; to avoid it being an illegal sentence, the appellant had to receive credit for time previously served for the same crime.

4

DOC's general counsel's] office[.] . . . [U]nfortunately we cannot release you until this

matter is resolved and your sentence structure is corrected."

On August 4, 2003, Appellee Wolfe wrote to Judge New for assistance in

resolving the issue with Appellant's sentence; Judge New failed to respond. In a second

letter, dated October 28, 2003, Appellee Wolfe informed Judge New that:

> Documents received by the [DOC] indicate that on April 10, 1997 Your Honor sentenced the inmate to 3 to 10 years . . . for a revocation of a consecutive probation. Credit is being ordered from 12/23/92 to 4/23/93, 10/08/93 to 03/04/94, 05/28/94 to 08/02/95, 09/21/95 to 09/06/96 and 03/16/97 to 04/10/97. The time from 12/23/92 to 04/23/93, 10/08/93 to 03/04/94, 05/28/94 to 08/02/95 and 9/21/95 to 09/06/96 was previously credited towards the original sentence of 4 months to 23 months (with a consecutive 1 years [sic] probation). We have not credited this inmate with this credit.
> The case at hand does not meet the criteria as stated in [*Williams*] as the combination of the . . . time to which he was previously sentenced (4 months to 23 months) and the revocation sentence (3 years to 10 years) does not equal the maximum amount of time to which he can be sentenced. Credit has been denied in accordance with [*Bowser*]. A letter was sent to your Honor on August 4, 2003 requesting an adjustment on Mr. McSpadden's commitment credit as stated above. The inmate is now back as a Parole Violator and we have sentenced the inmate only awarding him credit from 03/16/97 to 04/10/97, please notify us if your Honor wants the inmate to have the additional credit as stated above.

In a letter dated November 3, 2003, Judge New informed Appellees that "my

---

> *Williams* does not control our case. Appellant's revocation sentence (one to three years), combined with the time to which he has previously been sentenced (six to 23 months), does not equal the maximum amount of time to which he can be sentenced (seven years). Accordingly, appellant's sentence is not illegal and *Williams* does not apply.

*Id.*; *but see id.* at 351-52 (Olszewski, J. dissenting) (opining that *Williams* was "directly on point" and that Bowser should be credited for the entire period he had already served).

sentence of April 10, 1997 of 3 years to 10 years was **with all appropriate credit for time served**.[3] I do not want any additional credit to accrue to [Appellant]." Appellees claim that, because this letter did not reference the July 22, 1998, amended order, they construed it to mean that Appellant should be granted credit only for time served from March 16, 1997, through April 10, 1997, and not any other "additional credit."

On September 3, 2004, Appellant sought relief in the Commonwealth Court of Pennsylvania, requesting that the court order the DOC to award him credit for all periods of incarceration specified in the July 22, 1998, order. In an opinion dated March 17, 2005, the Commonwealth Court held that, under *McCray v. Pa. Dep't of Corr.* (*McCray I*), 807 A.2d 938 (Pa. Commw. Ct. 2002)[4], Appellant was "entitled to receive credit for all

---

[3]Judge New's emphasis.

[4]On May 1, 1996, McCray was arrested and incarcerated and, on November 5, 1997, he entered a plea agreement and was sentenced to 11.5 to 23 months' incarceration and a concurrent probation term of ten years, with credit for time already served. *McCray I*, 807 A.2d at 940. After considering his petition for reconsideration of sentence, the trial court vacated that sentence and, on January 7, 1998, imposed the following sentence: "'Time in to 23 months at the Phila. County Prison. *Credit for time served.* Immediate parole is Granted. Plus (10) years Probation to run concurrent to be supervised under the State Parole Board.'" *Id.* (quoting sentencing order) (emphasis added by *McCray I* court). McCray's probation was revoked and the trial court sentenced him to two to four years incarceration to run concurrently to his original charges, to be followed by five years of probation. *Id.* McCray requested the DOC to credit the time he served under the "time in to 23 months" sentence against the sentence imposed after the probation revocation. *Id.* After they refused to do so, McCray petitioned the Commonwealth Court, alleging that the DOC calculated his sentence incorrectly by not crediting him for the time served from May 1, 1996, to January 7, 1998, toward his new sentence of 2-4 years. *Id.* The court expressly agreed with the *Bowser* dissent and held that, "[b]ecause McCray served the entire 23 months for the underlying offense and did not receive any credit for that time served, he should have received credit for the 23 months served against his sentence of 2-

6

time spent in custody under a prior sentence when he is later reprosecuted and resentenced for the same offense." *McSpadden v. Dep't of Corr.* (*McSpadden I*), 870 A.2d 975, 982 (Pa. Commw. Ct. 2005). The DOC appealed this decision to the Supreme Court of Pennsylvania, which remanded the case to the Commonwealth Court for reconsideration in accordance with *McCray v. Pa. Dep't of Corr.* (*McCray II*), 872 A.2d 1127 (Pa. 2005), which held that the DOC did not have a clear duty to award a prisoner credit for time served when a trial court has not so directed.[5]

On November 4, 2005, after considering the Pennsylvania Supreme Court's decision in *McCray*, the Commonwealth Court held that that case was distinguishable from Appellant's because, in Appellant's case,

> Judge New awarded [him] specific credit for time served and listed the dates for which credit was awarded. In [*McCray II*], [the Pennsylvania] Supreme Court . . . determined that DOC is "an executive branch agency that is charged with faithfully implementing the sentences imposed by the courts. As part of the executive branch, the [DOC] lacks the power to adjudicate the legality of a sentence or to add or delete sentencing conditions." [*McCray II*], 872 A.2d at 1133. Here, DOC did not faithfully implement the sentence imposed by the trial court. Instead, DOC requested clarification of the sentence. The trial court responded that the sentence was with all appropriate time served. DOC took that to mean that [Appellant] was not entitled to the credit the trial court had awarded him. This Court does not believe that DOC has the authority to delete the proviso

4 years." *Id.* at 942.

[5]*McCray II*, in basing its decision to reverse the Commonwealth Court on grounds relating to Pennsylvania's writ of mandamus mechanism, did not clarify the state of Pennsylvania sentencing law. The decision to reverse was partially grounded in the fact that, before a writ of mandamus could issue, McCray had to show a "clear right to relief" and, in light of the potentially conflicting *Williams* and *Bowser* decisions, he could not do so. *McCray II*, 872 A.2d at 1132.

of the specific time served contained in the trial court's [July 22, 1998,] sentence. *McSpadden v. Dep't of Corr.* (*McSpadden II*), 886 A.2d 321, 328 (Pa. Commw. Ct. 2005). Pursuant to this reasoning, the court again directed the DOC to credit Appellant with all previous time served. *Id.* at 329. Appellant was released from custody and, on March 29, 2007, filed the instant § 1983 action. Appellees' motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) was granted by the District Court, which decided that Appellees were entitled to qualified immunity. The current appeal followed.

## II.

The District Court had jurisdiction over Appellant's 42 U.S.C. § 1983 claim pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has appellate jurisdiction under 28 U.S.C. § 1291. Our review of both a dismissal under Federal Rule of Civil Procedure 12(b)(6) and a grant of qualified immunity is plenary. *Gibson v. Superintendent of NJ Dep't of Law and Public Safety*, 411 F.3d 427, 433 (3d Cir. 2005) (citing *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001)). In reviewing the dismissal of a claim under Rule 12(b)(6), we must accept the allegations of the complaint as true and draw all reasonable inferences in the light most favorable to the plaintiff; the same approach applies when qualified immunity is asserted in a Rule 12(b)(6) motion. *Leveto*, 258 F.3d at 161.

## III.

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The defense "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Immunity, however, "generally is available only to officials performing discretionary functions," as opposed to those performing "ministerial" tasks. *Harlow*, 457 U.S. at 816. This Court has recognized that "the definition of a discretionary function is broad." *Eddy v. Virgin Islands Water and Power Auth.*, 256 F.3d 204, 210-11 (3d Cir. 2001). According to the Supreme Court, a "law that fails to specify the precise action that the official must take in each instance creates only discretionary authority; and that authority remains discretionary however egregiously it is abused." *Davis v. Scherer*, 468 U.S. 183, 196 n.14 (1984).

Appellant argues that, because Pennsylvania law requires that a prison official follow the sentencing order of a common pleas court, Appellees' calculation of Appellant's proper term of imprisonment was a ministerial task for which they are not entitled to qualified immunity. In making this argument, Appellant cites Pennsylvania caselaw holding that "[i]t is beyond cavil that the Department has a duty to credit . . . inmates[] for all statutorily mandated periods of incarceration." *McCray II*, 872 A.2d at 1133. Appellant also notes that he obtained relief from the Commonwealth Court by

9

petitioning for a writ of mandamus, a form of relief "available only to compel the performance of a ministerial act or mandatory duty where there exists no other adequate or appropriate remedy." *McCray II*, 872 A.2d at 1131.

While Pennsylvania courts may, for mandamus purposes, consider DOC officials' duty to implement accurately a trial court's sentence "ministerial" or "mandatory," the fact remains that Pennsylvania law regarding computation of sentences involving revocation of probation and parole has been described as "varied and occasionally mystifying." 16B West's Pa. Prac., Crim. Prac. § 31:31 (2008). We do not dispute the fact that prison officials are bound to implement the sentence imposed by the court but we also recognize that, under Pennsylvania law, the computation of sentences involving the revocation of probation and parole is far from straightforward. *See, e.g., Commonwealth v. Yakell*, 876 A.2d 1040, 1043 (Pa. Super. Ct. 2005) ("The practical applications of *Williams* and *Bowser* are not necessarily clear in the best of circumstances."). In addition to the already vexing case law, Appellees had to contend with the ambiguity in Judge New's November 3, 2003, letter, which, in making no reference to the July 22, 1998, order and stating that the April 10, 1997, order was "with all appropriate credit," presented Appellees with seemingly conflicting directives.

This Court has noted that "officials must make discretionary determinations even in the course of applying facially clear provisions. [When a] decision . . . require[s] such discretionary determinations, including legal analysis . . . , it cannot be characterized as a

10

ministerial act outside the scope of the qualified immunity doctrine." *Larsen v. Senate of Commonwealth of Pa.*, 154 F.3d 82, 87 n.5 (3d Cir. 1998). In the case at hand, Appellees were forced to apply confused caselaw to a confusing factual situation—when presented with a sentence that, in their opinion, violated *Bowser*, they twice wrote for clarification to the sentencing judge, who, in emphasizing that the April 10, 1997, sentence was "with all appropriate credit for time served," led them to believe that the credit specified in the amended order had already been applied. In light of the complexity of Pennsylvania sentencing case law, and the fact that Appellees were confronted with Judge New's ambiguous letter, computation of Appellant's sentence constituted a discretionary function for which qualified immunity may be available. *See Larsen*, 154 F.3d at 87 n.5; *Davis*, 468 U.S. at 196 n.14 (1984).

We now proceed to determine whether Appellant's alleged right to a proper sentencing computation was clearly established at the time of the alleged violation; if not, then Appellees are entitled to qualified immunity. *See Pearson v. Callahan*, 129 S.Ct. 808 (2009) (holding that a federal court deciding qualified immunity issues has discretion to decide a case based solely on whether an alleged right was "clearly established"). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). Because officials of reasonable competence necessarily could not disagree with the proper application of a law

11

that identifies "the precise action" that they must take in a given situation, this analysis relies on many of the same factors that informed our ministerial-discretionary analysis. Compare *Davis*, 468 U.S. at 196 n.14 (a "law that fails to specify the *precise* action that the official must take in each instance creates only discretionary authority" (emphasis added)); with *Malley*, 475 U.S. at 341 ("if [officials] of reasonable competence could disagree on [an] issue, immunity should be recognized").

Given the circumstances that were confronting Appellees, we cannot say that it should have been clear to them that their conduct was unlawful. The Pennsylvania Superior Court itself, in addressing the law confronting Appellees at the time of their alleged violation, noted that "[t]he practical applications of *Williams* and *Bowser* are not necessarily clear in the best of circumstances." *Yakell*, 876 A.2d at 1043; *see also id.* at 1044 (contemplating whether the trial court was "simply caught in the admittedly confusing practical applications of *Bowser* and *Williams*"); *see also* 16B West's Pa. Prac., Crim. Prac. § 31:31 (2008) (describing computation of sentences involving revocation of probation and parole as "varied and occasionally mystifying"). The situation was further complicated by Judge New's response to Appellees' request that he clarify what they, under *Bowser*, determined to be an illegal sentence. Thus, because "it would not have been clear to a reasonable [official] what the law required under the facts alleged [by Appellant], [Appellees are] entitled to qualified immunity." *Kopec v. Tate*, 361 F.3d 772, 776 (2004).

12

IV.

For the reasons stated above, we affirm the District Court's grant of Appellees'

Motion to Dismiss on the basis of qualified immunity.